JOHN C. HOWE & others *vs.* INHABITANTS OF WEYMOUTH.

Norfolk.　November 16, 1891. — January 11, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Taking of Water Power — Damages — Evidence.*

On the assessment of damages for the taking by a town of the water power of a combined steam and water mill, after the mill-owner had been allowed to show the cost of furnishing steam power equivalent to the water power taken, the town was allowed to show the cost of an engine which would furnish more power than both the old engine and the proposed new one, and be more economical to run. *Held,* that the evidence was properly admitted.

At the trial of a petition for the assessment of damages for depriving a mill of its water power upon the taking of the waters of a great pond by a town for a water supply, the mill-owner, for the purpose of showing that the water from the great pond was colder than the other waters coming to his mill pond, offered evidence of observations of the temperature of the water in the great pond, and in and about the brooks, meadows, and other ponds in the water-shed between that pond and his mill, made nearly six years after the town had taken the waters of the great pond. No evidence had been offered to show that the relative temperature of these different waters in respect to each other would be the same in the winter when the observations were made as at the time of the taking by the town, or in the average of years. *Held,* that the evidence might properly be excluded in the discretion of the presiding judge.

PETITION to the Superior Court, under the St. of 1881, c. 174, § 3, by the owners of a mill and water privilege on a natural stream running from Weymouth Great Pond, for a jury to assess the damages sustained by them by the deprivation of water power through the taking of the waters of that pond on November 8, 1884, by the respondent town for a water supply. Trial in the Superior Court, before *Lathrop,* J., who, against the petitioners' objection, admitted certain evidence offered by the respondent, and excluded other evidence offered by the petitioners; and the petitioners, after the jury had returned a verdict assessing their damages, being dissatisfied therewith, alleged exceptions. The nature of the evidence appears in the opinion.

*E. C. Bumpus,* for the petitioners.

*R. M. Morse & M. Morton,* for the respondent.

ALLEN, J.　The jury were properly instructed that the measure of damages was the depreciation in the market value of the petitioners' property, and that the petitioners were not entitled

to recover the cost of substituting an equivalent steam power for the water power taken by the town; and no exception was taken to this instruction. But, against the respondent's objection, the petitioners were allowed to show the cost of furnishing an equivalent steam power for the water power taken, as bearing upon the question of the depreciation in the market value of the property. The petitioners then proceeded to put in testimony to show what it would cost to put in a new engine of twenty horse power, and their witness estimated on this basis that the cost per horse power per year would be $105; and being asked in cross-examination how he got at the amount, he stated that he reckoned interest on the cost of the plant, $1,600, and afterwards he gave the items of cost in detail, amounting to $1,345. The average amount of water taken was fourteen and one half horse power.

The petitioners, on losing the fourteen and one half horse power taken by the town, might prefer simply to get along without it, or they might wish to supply, by steam or otherwise, the same amount of power which they had lost, or, finding some change to be expedient, they might prefer to enlarge their power. In either case, the rule of damages would be the diminution of the market value of their property, and this would not be directly controlled by the subsequent use to which they might wish to put the property. But for the purpose of aiding the jury they were allowed to show the cost per horse power of supplying the loss, provided an additional steam engine should be put in that would give twenty horse power. The respondent then contended, in effect, that this as a test or guide was misleading, and that if the petitioners were going to put in a new engine it would be better to put in a still larger one, affording yet more surplus of power, and that instead of putting in an engine that would furnish twenty horse power, it would be more economical to put in one that should supersede the existing engine, and that would furnish one hundred and twenty horse power. The existing engine was of seventy-five horse power. The respondent was allowed to show the cost of such an engine, and, in view of the testimony which had been put in by the petitioners, they had no just reason to complain of this testimony. It furnished no final test, but it was

evidence of the same kind as that of the petitioners, and it had a legitimate tendency to meet that, and to do away with its effect.

The other exception of the petitioners is to the exclusion of the evidence of observations of the temperature of the water in the Weymouth Great Pond, and in and about thirty-five different places in brooks, meadows, and other points in the water-shed between that pond and the petitioners' mill, taken in the winter of 1889–90, or nearly six years after the town had taken the waters of the Weymouth Great Pond. The purpose was in aid of other evidence which the petitioners had put in, without objection, to show that the water from the Weymouth Great Pond was colder than the other waters coming to the petitioners' mill-pond. At the time of the offer to prove these observations there had been no evidence to show that the relative temperature of these different waters in respect to each other would be the same in the winter of 1889–90 as at the time of the taking by the town, or in the average of years, and the observations were taken at many different places not in the main stream, but in brooks and meadows. Under these circumstances, we do not know but the relative temperature might be affected by various causes, such as the degree of coldness of the winter, the quantity of rain or snow, the cutting down of trees, the opening of drains, and other things. Before a court can be called upon to admit such testimony as was offered, it should at least be satisfied that some light would or might be gained from it. As the case stood, the evidence might properly be excluded, in the discretion of the presiding judge.

*Exceptions overruled.*